**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

FILED

2003 OCT 27 P 12: 50

| | | |
|---|---|---|
| THE MAY DEPARTMENT STORE COMPANY | : | CIVIL ACTION NO. |
| *PLAINTIFF* | : | 300-CV-2449 AHN |
| | : | |
| vs. | : | |
| | : | |
| NEWFIELD CONSTRUCTION COMPANY, INC. | : | **JURY TRIAL DEMANDED** |
| *DEFENDANT / THIRD PARTY PLAINTIFF* | : | |
| | : | |
| vs. | : | |
| | : | |
| INTERSTATE WELDING AND | : | OCTOBER 24, 2003 |
| MECHANICAL CO., INC. | : | |
| *THIRD PARTY DEFENDANT /* | : | |
| *FOURTH PARTY PLAINTIFF* | : | |
| | : | |
| vs. | : | |
| | : | |
| GEM SPRINKLER MANUFACTURING | : | |
| COMPANY, ET AL | : | |
| *FOURTH PARTY DEFENDANTS/* | : | |
| *APPORTIONMENT DEFENDANTS* | : | |

<u>**THIRD PARTY DEFENDANT/FOURTH PARTY PLAINTIFF, INTERSTATE
WELDING AND MECHANICAL COMPANY, INC.'s, OBJECTION TO DEFENDANT
GEM SPRINKLER MANUFACTURING MOTION TO PRECLUDE AN EXPERT
WITNESS**</u>

The third-party defendant/fourth-party plaintiff, Interstate Welding and Mechanical

Company, Inc., ("Interstate") hereby objects to the fourth-party defendant's, Gem Sprinkler

Manufacturing Co. ("Gem Sprinkler"), motion to preclude Interstate's expert, Wilson G. Dobson,

PE, from testifying at trial.

**Expert Wilson Dobson was properly disclosed**

Interstate disclosed Wilson Dobson of Binary Engineering on July 23, 2001 in its initial

**ORAL ARGUMENT REQUESTED**

disclosure in accordance with FRCP 26(a). (Initial disclosure of expert is attached hereto as Exhibit A.) In addition, on September 21, 2001, Interstate identified, in the plaintiff's first set of interrogatories, Mr. Dobson as an expert it intended to call as a witness at the time of trial. Along with the identification of Mr. Dobson, Interstate attached the expert's report dated January 4, 2000. (January 4, 2000 report is attached hereto as Exhibit B.) In his report, Mr. Dobson set-forth his initial opinion on what caused the sprinkler head to activate. He opined that he "could find no evidence that the sprinkler head had been subjected to any kind of mechanical damage either that could have caused it to be weakened and prone to delayed failure, or damaged at the moment of release. There was no evidence that the sprinkler head had been damaged during installation." (Exhibit B.) Furthermore, Gem Sprinkler admits in their motion to preclude that they had notice that Mr. Dobson was Interstate's expert and they had possession of his January 2000 report. It was Gem Sprinkler's decision not to depose Mr. Dobson. Therefore, Mr. Dobson was properly disclosed as an expert under FRCP 26(a), and his initial report was provided to all attorneys of record.

**The expert's supplemental report was properly disclosed**

Mr. Dobson was asked to comment on spontaneous failure. Mr. Dobson opined in his supplemental report dated April 19, 2002 that "Spontaneous failures (pre-operation) of sprinklers, though rare, is not unheard of, and absent any sign of mechanical damage it is reasonable to believe that this sprinkler falls into this category. It is well established in the sprinkler industry that pre-operation does occur, and that quick response sprinklers are more delicate and more prone to pre-operation than fusible link type or non-quick response sprinklers." (April 19, 2002 report is attached hereto as Exhibit C). Even though Mr. Dobson opined that

2

spontaneous failures are well known in the industry, he lacked the specific statistical data required to substantiate his hypothesis

In June 2002, following Mr. Dobson's supplemental report of April 19, 2002, Interstate propounded additional interrogatories and request for production on Gem Sprinkler seeking statistical data relating to spontaneous failures. Gem Sprinkler objected to the additional discovery as untimely. Interstate filed a motion to compel disclosure of the statistical data, which this court granted on January 8, 2003. (Court's ruling on the motion to compel is attached hereto as Exhibit D). Gem Sprinkler did not provide the statistical data sought by Interstate until March 10, 2003. (Gem Sprinkler's compliance with Interstate's second set of interrogatories and request for production is attached hereto as Exhibit E). This material was reviewed by counsel for Interstate, and then the scientific statistical data was sent to Mr. Dobson for review.

Upon review of the statistical data provided by Gem Sprinkler, Mr. Dobson had the required data necessary to testify at trial regarding the spontaneous failure of the sprinklers manufactured by Gem Sprinklers. Once Mr. Dobson had time to review and confirm his opinion, the report dated April 19, 2002 was fully disclosed to all counsel. Without this additional scientific data, Mr. Dobson would not have been able to testify on the spontaneous failure of the sprinklers manufactured by Gem Sprinklers, as his testimony would not have reached the level of reasonable scientific certainty required under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786 (1993).

**The delay, if any, is harmless to Gem Sprinkler**

Without the additional scientific statistical information, Mr. Dobson would not have been able to testify regarding spontaneous failure of sprinklers, and his comments in the April 19,

2002 report would have been subject to a <u>Daubert</u> challenge. Furthermore, the delay in disclosing the additional report of Mr. Dobson is harmless to Gem Sprinkler because opinions upon which Mr. Dobson will testimony are based on recently disclosed data supplied by Gem Sprinkler. Gem Sprinkler has always had this data; this data was not in the public domain, and Gem Sprinkler was aware that Interstate was seeking this information. Trial in this case is not scheduled until March 29, 2004, more than 6 months from the disclosure of the supplemental report of Mr. Dobson. There is ample time for counsel from Gem Sprinkler to depose Mr. Dobson, and counsel for Interstate has no objections to the deposition of Mr. Dobson.

Accordingly, the third party defendant/fourth party plaintiff Interstate respectfully requests that this Court denies Gem Sprinkler's motion to preclude Mr. Dobson as an expert. Mr. Dobson was initially disclosed on July 23, 2001, and his initial report was provided to all counsel of record on September 21, 2001, well within the scheduling order. His supplemental report was not provided to all counsel until Mr. Dobson had the statistical data he required and had ample time to review and confirm his statements in his April 19, 2002 report. The late disclosure of the supplemental report is due to Interstate's not receiving the required statistical data from Gem Sprinkler until March 10, 2003.

**WHEREFORE**, Interstate requests that this court denies the motion to preclude Mr. Dobson as an expert.

                            INTERSTATE WELDING AND MECHANICAL
                            COMPANY, INC.
                            THIRD PARTY DEFENDANT/
                            FOURTH PARTY PLAINTIFF

BY: _____
                            JOHN J. PEZZILLO, ESQ.    (CT 23649)
                            Ryan, Ryan, Johnson & Deluca, LLP
                            80 Fourth Street
                            Stamford, CT   06905
                            Phone No.  (203) 357-9200

## CERTIFICATE OF SERVICE

This will certify that a copy of the above has been mailed via United States mail, first class,

postage prepaid, to the following counsel and pro se parties of record on October 24, 2003:

Stuart Glen Blackburn, Esq.
Two Concorde Way
P.O. Box 608
Windsor Locks, CT   06096

Mark T. Mullen, Esq.
Cozen and O'Connor
The Atrium - Third Floor
1900 Market Street
Philadelphia, PA   19103

Paul Pieczak, Esq.
Law Offices of Christopher Powderly
9 Farm Spring Road
Farmington, CT   06032

Matthew G. Conway, Esq.
Conway & Stoughton, LLP
201 Ann Street
Hartford, CT 06103

Andrew S. Turret, Esq.
Law Offices of Robert M. Brennan
265 Church Street, Suite 802
New Haven, CT 06510

Constance L. Epstein, Esq.
Howard, Kohn, Sprague & Fitzgerald
Box 261798
Hartford, CT 06126-1798

I:\Procases\102.015\ObjMotionPreclude102103.wpd/102.015

_____
JOHN J. PEZZILLO, ESQ.

6

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE MAY DEPARTMENT STORE COMPANY | : | CIVIL ACTION NO. |
| *PLAINTIFF* | : | 300-CV-2449 AHN |
| | : | |
| vs. | : | |
| | : | |
| NEWFIELD CONSTRUCTION COMPANY, INC. | : | **JURY TRIAL DEMANDED** |
| *DEFENDANT / THIRD PARTY PLAINTIFF* | : | |
| | : | |
| vs. | : | |
| | : | |
| INTERSTATE WELDING AND | : | JULY 23, 2001 |
| MECHANICAL CO., INC. | : | |
| *THIRD PARTY DEFENDANT /* | : | |
| *FOURTH PARTY PLAINTIFF* | : | |
| | : | |
| vs. | : | |
| | : | |
| NORTHERN WINDUSTRIAL CO., and | : | |
| GEM SPRINKLER MANUFACTURING CO. | : | |
| *FOURTH PARTY DEFENDANTS* | : | |

## INITIAL DISCLOSURE IN ACCORDANCE WITH FRCP RULE 26(a) BY INTERSTATE WELDING AND MECHANICAL, CO., INC. THIRD PARTY DEFENDANT/FOURTH PARTY PLAINTIFF

A.    INDIVIDUALS LIKELY TO HAVE KNOWLEDGE OF DISCOVERABLE FACTS:

1.      Any and all such individuals identified by plaintiff in its' Initial Disclosure dated

May 15, 2001.

2.      Bill Dobson of Binary Engineering, 1072 Main Street, Holden, MA 01520,

84 A

telephone (508-829-4362).  Mr. Dobson will have an opinion concerning the condition of the sprinkler head at the time it deployed.

3.     David Beaver, Eastland Claims, 2470 Main Street, Bridgeport, CT  06606, telephone (203-330-6200).  Mr. Beaver conducted adjustment activities on the loss on behalf of the CNA Insurance Company.

B.     DOCUMENTS AND THINGS IN THE POSSESSION OF COUNSEL OR PARTY

1.     Newfield Construction, Inc. Subcontract for building construction made July 15, 1999 between Newfield Construction, Inc. and IW&M Mechanical Contractors (attached).

2.     Specimen sprinkler head.

C.     COMPUTATION OF DAMAGES

This party is not claiming economic loss at this time, but may do so in the future.

D.     INSURANCE AGREEMENTS

1.     The contract for insurance may be inspected or copied as requested upon reasonable notice to the undersigned.

2.     A copy of the dec sheet for said policy is attached hereto.

INTERSTATE WELDING AND MECHANICAL
CO., INC.
THIRD PARTY DEFENDANT/
FOURTH PARTY PLAINTIFF


BY:
KEVIN M. TEPAS, ESQ.    (ct 05552)
Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street
Stamford, CT   06905
Phone No.  (203) 357-9200

## CERTIFICATE OF SERVICE

This will certify that a copy of the above has been mailed via United States mail, first class, postage prepaid, to the following counsel and pro se parties of record on July 23, 2001

S. Glen Blackburn, Esq.
11 High Street
Enfield, CT  06078
*Attorney for Plaintiff, May Department Store Company*

Mark T. Mullen, Esq.
Cozen and O'Connor
The Atrium - Third Floor
1900 Market Street
Philadelphia, PA  19103
*Attorney for Plaintiff, May Department Store Company*

Lewis S. Lerman, Esq.
8 Wright Street, First Floor
Westport, CT  06880
*Attorney for Defendant/Third Party Plaintiff, Newfield Construction Company, Inc.*

_____
KEVIN M. TEPAS, ESQ.

I:\PROCASES\MAYDEPT\PLEADING\DISCLOSU.PLD/102.015

# BINARY
## ENGINEERING ASSOCIATES, INC.
*Engineering Consultants*

P.O. Box 528
1072 MAIN ST.

HOLDEN, MA. 01520

TEL. (508) 829-4362
(508) 829-4361
FAX: (508) 829-0028

January 4, 2000
Project 91101

Nicholas Panselinas
CNA Insurance Companies
P.O. Box 9167
1250 Hancock St.
Quincy, MA 02269-9167

Subject: Insured Interstate Welding & Mechanical
         Your File Number 29641480

Dear Mr. Panselinas:

On December 21, 1999 I visited the offices of Grinnell Corporation, also known as GEM Sprinkler, Cranston, RI. The purpose of my visit was to inspect a sprinkler head that failed on September 27, 1999 in the Filene's Department Store, West Farms Mall, West Hartford, CT. During my visit I was escorted by Robert Tramm.

It is my understanding that the subject sprinkler head had been installed by the insured on or about August 26, 1999 as part of relocation of sprinkler pipes in the Filene's store. Subsequently, on September 27, 1999 the insured adjusted the pipe and sprinkler head locations to fit in the suspended ceiling grid work. This work was performed without needing to touch the sprinkler heads. On September 29, 1999 the sprinkler head failed causing a release of water within the Filene's store and resulting water damage to the premises and contents.

Attached photographs 1 and 2 is an overall view of the subject sprinkler head in the condition I saw it on December 21. From labeling on the sprinkler I was able to identify it as a Grinnell/GEM ½ inch orifice, 155 degree, 1999 date code, Model A, QR pendent sprinkler. Attached as an appendix to his report is a copy of the specification sheet for this model sprinkler. Also available for inspection was the "button" which is the plug which is held in place to seal the sprinkler head.

The sprinkler works on the principle of having a frangible link consisting of a liquid filled glass bulb holding the sprinkler closed against the pressure of the sprinkler system. On exposure to elevated temperature the liquid expands, breaking the glass, thereby allowing internal pressure to push out the plug sealing the sprinkler head.

1000010101001001100111010000011010010101100110001011001111910001101
1001001100111010001011000101101001010010011001110109011010000901
1010011101001110011111000011100100110000011010100100010110100111

Ex. 6

Based on my inspection I could find no evidence that the sprinkler head had been subjected to any kind of mechanical damage either that could have caused it to be weakened and prone to delayed failure, or damaged at the moment of release. There was no evidence that the sprinkler head had been damaged during installation.

If you have any questions or need more information, do not hesitate to contact me.

Sincerely,

Wilson G. Dobson, P.E.



Photograph 1
Overall view of sprinkler head examined. Also available for inspection was the "button" that seals the sprinkler. Components of the frangible link were not recovered.



Photograph 2
Another view of the sprinkler head and button.



# PENDENT, RECESSED PENDENT, AND UPRIGHT SPRINKLERS

## UNIVERSAL MODEL A

### QUICK RESPONSE, 3mm BULB TYPE, 1/2" (15mm) ORIFICE, 1/2" NPT**



PENDENT          RECESSED PENDENT          UPRIGHT          CROSS SECTION

1 - Frame          3 - Gasketed          4 - Bulb
2 - Button              Spring          5 - Compression
                   Plate              Screw          6 - Deflector

* Temperature rating is indicated on deflector or adjacent to orifice seat on frame.
** Pipe thread connections per ISO 7/1 can be provided on special request.

**FIGURE A**
**1/2 INCH ORIFICE MODEL A PENDENT, RECESSED PENDENT, AND UPRIGHT SPRINKLERS**

## GENERAL DESCRIPTION

The 1/2 inch (15mm) orifice Universal Model A Pendent, Recessed Pendent, and Upright Sprinklers (Ref. Figure A) are automatic sprinklers of the frangible bulb type. They are "quick response - standard orifice spray sprinklers" intended for use in fire sprinkler systems designed in accordance with the standard installation rules recognized by the applicable Listing or Approval agency (e.g., UL Listing is based on NFPA 13 requirements). The Pendent, Recessed Pendent, and Upright Sprinklers all produce a hemispherical water distribution pattern below the deflector.

The recessed versions of the Model A Sprinkler are obtained by utilizing the Model F700 Pendent Sprinkler in combination with the Model F700 Recessed Escutcheon (Ref. Figures A and C). The F700 Recessed Escutcheon provides 1/2 inch (12,7mm) of recessed adjustment or up to 3/4 inch (19,1mm) of adjustment from the flush pendent position.

The F700 has a separable two-piece

design which allows installation of the sprinklers and pressure testing of the fire protection system, prior to ceiling construction and/or application of a finish coat to the ceiling. They also permit refinishing of a ceiling surface without having to first shut down the fire protection system and remove the sprinklers.

The adjustment provided by the F700 substantially reduces the accuracy to which the length of fixed pipe drops to the sprinklers must be cut. Also, the Closure has a 1/2 inch (12,7mm) wide flange which provides ample clearance for covering the mounting hole.

## APPROVALS AND STANDARDS

Laboratory listings and approvals for the 1/2 inch (15mm) orifice Model A Pendent, Recessed Pendent, and Upright Sprinklers are given in Table A.

***WARNING***
*The 1/2 inch orifice Model A Pendent, Recessed Pendent, and Upright Sprinklers described herein must be*

*installed and maintained in compliance with this document, as well as applicable standards of the National Fire Protection Association, in addition to the standards of any other authorities having jurisdiction. Failure to do so may impair the integrity of these devices.*

*The owner is responsible for maintaining their fire protection system and devices in proper operating condition. The installing contractor or manufacturer should be contacted relative to any questions.*

*Installation of Model A Pendent Sprinklers in recessed escutcheons other than the F700 will void all sprinkler warranties, as well as possibly void the sprinkler's Approvals and/or Listings.*

## TECHNICAL DATA

The 1/2 inch (15mm) orifice Model A Pendent, Recessed Pendent, and Upright Sprinklers are rated for use at a maximum service pressure of 175 psi (12,1 bar) and they are available in the

| TYPE | TEMPERATURE RATING | FRAME COLOR CODE | BULB LIQUID COLOR | SPRINKLER FINISH | | |
|---|---|---|---|---|---|---|
| | | | | NATURAL BRASS | CHROME PLATED | POLYESTER COATED (All Colors) |
| PENDENT and UPRIGHT | 135°F/57°C | Unpainted | Orange | 1, 2, 3, 4, 5 | | |
| | 155°F/68°C | Unpainted | Red | | | |
| | 175°F/79°C | White | Yellow | | | |
| | 200°F/93°C | White | Green | | | |
| RECESSED PENDENT* | 135°F/57°C | Unpainted | Orange | 1, 2, 5 | | |
| | 155°F/68°C | Unpainted | Red | | | |
| | 175°F/79°C | White | Yellow | | | |
| | 200°F/93°C | White | Green | | | |

**NOTES:**
1. Listed by Underwriters Laboratories, Inc. as Quick Response Sprinklers.
2. Listed by Underwriters' Laboratories of Canada as Quick Response Sprinklers.
3. Approved by Factory Mutual Research Corporation as Quick Response Sprinklers for use in Light or Ordinary Hazard (Groups 1 and 2) Occupancies. The FM Approvals are for wet pipe systems only and exclude occupancies involving low flash point (less than 100°F/38°C) flammable liquids or flammable hydraulic liquids.
4. Approved by the Loss Prevention Council (United Kingdom) as Quick Response Sprinklers.
5. Approved by the Scientific Services Laboratory (Australia) as Quick Response Sprinklers.
* Installed with 1/2" Model F700 Recessed Escutcheon.

**TABLE A**
**LABORATORY LISTINGS AND APPROVALS**

temperature ratings and finishes indicated in Table A.

Recessed versions of the Model A Sprinkler are obtained by utilizing the Model A Pendent Sprinkler in combination with the Model F700 Recessed Escutcheon. The F700 Escutcheons are available with a chrome plated finish or a coated finish in any color.

The nominal discharge curve plotted in Figure B represents the flow "Q" in GPM (LPM) as determined by the following formula:

$$Q = K\sqrt{p}$$

where the nominal discharge coefficient "K" equals 5.6 (80,7); and, "p" equals the residual flowing pressure in psi (bar). Listing standards permit the actual value of "K" to vary from 5.3 to 5.8 (76,4 to 83,6); however, for hydraulic calculations, a K-factor of 5.6 (80,7) is to be applied.

The Frame of the Model A Sprinkler (Ref. Figure A), is bronze per ASTM B176 (C87800) or, a proprietary alloy designated QM. The Button (bulb retainer) is phosphor bronze per ASTM B103 (C51000 or C52100). The Gasketed Spring Plate consists of a Beryllium Nickel (N03360) disc spring that is sealed on both its inside and outside faces with a Teflon† gasket. The Compression Screw is bronze per ASTM B140 (C31400) and the Deflector is brass per ASTM B152 (C11000). The Model A Sprinklers utilize a 3mm diameter frangible bulb. Table A indicates

the bulb liquid color as a function of temperature rating.

The F700 Recessed Escutcheon provided for use with the Model A Pendent Sprinkler (Ref. Figure C) has a Closure and Mounting Plate fabricated from low carbon steel. The Mounting Plate prongs, which are compressed back into the Mounting Plate as the Closure is pushed over it, maintain a tight friction fit between the two pieces. The Mounting Plate and Closure can also swivel relative to each other and compensate for minor non-perpendicularity between the Model A Sprinkler and the ceiling.

### INSTALLATION

*NOTES*
*Do not install any bulb type sprinkler if the bulb is cracked or there is a loss of liquid from the bulb. With the sprinkler held horizontal, a small air bubble should be present. The diameter of the air bubble is approximately 1/16 inch (1,6mm) for the 135°F/57°C to 3/32 inch (2,4mm) for the 200°F/93°C rating. (At higher ambient temperatures, the bubble may be barely perceptible for the lower temperature ratings.)*

*Installation of Model A Pendent Sprinklers in recessed escutcheons other than the F700 will void all sprinkler warranties, as well as possibly void the sprinkler's Approvals and/or Listings.*



**FIGURE B**
**NOMINAL DISCHARGE CURVE**

The Model A Sprinklers must be installed in accordance with the following instructions.

1. Prior to installing pendent sprinklers and if applicable, verify that the face of the sprinkler fitting is within the proper range of distance which can be accommodated by the type of escutcheon being used.

   When installing a Model A Pendent Sprinkler with the F700 Recessed Escutcheon, for best overall appearance, use Dimension "A" indicated under the "Fully Recessed Dimensions" heading of Figure C. Other-

† DuPont Registered Trademark

| FULLY RECESSED DIMENSIONS† | | |
| --- | --- | --- |

**Up to 1/2 inch adjustment from minimum 1/4 inch to maximum 3/4 inch recessed position.**

| Dim. | Inches | MM |
| --- | --- | --- |
| A- | 5/8±1/8†† | 15,9±3,2 |
| B-Min. | 3/4 | 19,1 |
| B-Nom. | 1 | 25,4 |
| B-Max. | 1-1/4 | 31,8 |
| C-Min. | 1/4 | 6,4 |
| C-Max. | 3/4 | 19,1 |

| HIGH ADJUSTMENT DIMENSIONS | | |
| --- | --- | --- |

**Up to 3/4 inch adjustment from the flush ceiling position to 3/4 inch recessed position.**

| Dim. | Inches | MM |
| --- | --- | --- |
| A- | 1/2±1/4†† | 12,7±6,4 |
| B-Min. | 3/4 | 19,1 |
| B-Nom. | 1-1/8 | 28,6 |
| B-Max. | 1-1/2 | 38,1 |
| C-Min. | FLUSH | — |
| C-Max. | 3/4 | 19,1 |



† For best overall appearance.

†† Remaining 1/4 inch (6,4mm) of adjustment can be used to compensate for variations in sprinkler make-in and fitting take-out.

1- Model A Pendent Sprinkler
2- Model F700 Recessed Escutcheon
  a- Mounting Plate
  b- Closure

**FIGURE C**
**MODEL A RECESSED PENDENT SPRINKLER ASSEMBLY**
**WITH TWO-PIECE MODEL F700 RECESSED ESCUTCHEON**

---

wise, use Dimension "A" under the "High Adjustment Dimensions" heading. In either case, the remaining adjustment can be used to compensate for the possible manufacturing variations in take-out of the fitting, as well as in the make-in of the sprinklers (as permitted by ANSI B1.20.1).

2. After installing the F700 Mounting Plate (or other escutcheon, as applicable) over the sprinkler threads, apply pipe thread sealant sparingly to the sprinkler threads only. Use of a Teflon* based pipe thread sealant is recommended.

3. Hand tighten the sprinkler into the sprinkler fitting.

4. Refer to Figure D and select the appropriate Sprinkler Wrench for tightening the sprinkler into the sprinkler fitting.

The F850 Sprinkler Wrench must be used for installing polyester coated sprinklers, in order to prevent damage to the sprinkler finish.

*NOTES*
*A leak tight 1/2 inch NPT sprinkler joint should be obtained with a torque of 7 to 14 ft.lbs. (9,5 to 19,0 Nm). A maximum of 21 ft. lbs.*

*(28,5 Nm) of torque is to be used to install the sprinklers. Higher levels of torque may distort the sprinkler inlet with consequent leakage or impairment of the sprinkler.*

*Do not attempt to make-up for insufficient adjustment in the escutcheon plate by under- or over-tightening the sprinkler. Readjust the position of the sprinkler fitting to suit.*

6. In recessed pendent sprinkler installations, after the ceiling has been installed or the finish coat has been applied, slide on the Model A Sprinkler and push the F700 Closure over the Model A Sprinkler and push the Closure over the Mounting Plate until its flange comes in contact with the ceiling.

**CARE AND MAINTENANCE**

Automatic sprinklers must never be shipped or stored where their temperatures will exceed 100°F/38°C and they must never be painted, plated, coated or otherwise altered after leaving the factory. Modified sprinklers must be replaced. Sprinklers that have been exposed to corrosive products of combustion, but have not operated,

should be replaced if they cannot be completely cleaned by wiping the sprinkler with a cloth or by brushing it with a soft bristle brush.

Care must be exercised to avoid damage to the sprinklers — both before and after installation. Sprinklers damaged by dropping, striking, wrench twist/slippage, or the like, must be replaced. Also, replace any sprinkler that has a cracked bulb or that has lost liquid from its bulb (ref. Installation Section Note).

*NOTES*
*Absence of an escutcheon, which is used to cover a clearance hole, may delay the time to sprinkler operation in a fire situation.*

*Before closing a fire protection system control valve for maintenance work on the fire protection system which it controls, permission to shut down the affected fire protection system must be obtained from the proper authorities and all personnel who may be affected by this action must be notified.*

It is recommended that automatic sprinkler systems be inspected quarterly by a qualified Inspection Service.

## SELECTION:
Select the appropriate wrench based on the following require-ments:

A. Model A Sprinklers with a natu-ral brass or chrome plated fin-ish and where the Wrench Flats shown in Figure A are accessi-ble, may be be installed using an 8 or 10 inch adjustable Cres-cent type wrench or the Model F850 Sprinkler Wrench.

B. Model A Sprinklers with a poly-ester coated finish must only be installed with the Model F850 Sprinkler Wrench.

C. Model A Recessed Pendent Sprinklers which are to be in-stalled after completion of a fixed ceiling must only be in-stalled with the Model F850 Sprinkler Wrench.



— WRENCH LUGS —

**Model F850 Nylon Coated Sprinkler Wrench**

## USE:
When using an 8 or 10 inch adjustable Crescent type wrench, the wrench is to be applied to the sprinkler wrench flats only (Ref. Figure A).

To use the F850 Sprinkler Wrench, slip the Wrench opening over the Model A Sprinkler Deflector by passing the Sprinkler Wrench around the side of the Sprinkler as shown in the above illustration.

Using a 1/2 inch ratchet drive or by applying an 8 or 10 inch adjustable wrench to the hex end of the Sprinkler Wrench, tighten the sprinkler into the fitting. The two lugs located on opposite sides of the Wrench indicate the orientation of the sprinkler frame arms.

### NOTE
*Push up on the Sprinkler Wrench, while it is being turned, to ensure that the Wrench recess stays fully engaged with the sprinkler wrench flats.*

Carefully remove the Sprinkler Wrench by disengaging it from the sprinkler wrench flats, and then passing it sideways over the sprinkler deflector.

**FIGURE D**
**SPRINKLER WRENCH SELECTION AND USE**



PSN 57 — XXX — X — XXX

| | TYPE | | SPRINKLER FINISH | | TEMPERATURE RATING |
|---|---|---|---|---|---|
| | | | | 135 | 135°F/57°C |
| 371 | QR PENDENT | 1 | NATURAL BRASS | 155 | 155°F/68°C |
| | | 4 | WHITE POLYESTER | 175 | 175°F/79°C |
| 370 | QR UPRIGHT | 9 | CHROME PLATED | 200 | 200°F/93°C |

**TABLE B**
**PRODUCT SYMBOL NUMBER SELECTION**
**1/2 INCH ORIFICE MODEL A PENDENT AND UPRIGHT SPRINKLERS**
**WITH 1/2 INCH NPT CONNECTIONS**

® Registered trademark of GRINNELL CORPORATION, 3 TYCO PARK, EXETER, NH 03833

## WARRANTY

Seller warrants for a period of one year from the date of shipment (warranty period) that the products furnished hereunder will be free from defects in material and workmanship.

*For further details on Warranty, see Price List.*

## ORDERING PROCEDURE

A Product Symbol Number (PSN) is not specified when ordering polyester coated Model A Sprinklers with other than a white color; when ordering color coated Model F700 Recessed Es-cutcheons with other than a white color; or, when ordering sprinklers with thread connections per ISO 7/1. It is suggested that a color chip be pro-vided when ordering special color fin-ishes. Otherwise, responsibility for du-plication cannot be accepted.

Contact your local distributor for avail-ability.

**Sprinkler Assemblies:**
Specify: 1/2" orifice, (specify tempera-ture rating), Model A (specify Pendent or Upright) Sprinkler with (specify type of finish), PSN (specify from Table B).

**"Special Order"**
**Sprinkler Assemblies with ISO 7/1**
**Thread Connections:**
Specify: 1/2" orifice, (specify tempera-ture rating), Model A (specify Pendent or Upright) Sprinkler with (specify type of finish) and with thread connection per ISO 7/1.

**Recessed Escutcheon:**
Specify: 1/2" (15mm) Model F700 Re-cessed Escutcheon with (specify fin-ish), PSN (specify).

1/2" (15mm) F700
    Chrome Plated . . . . . . . . PSN 56-701-9-010
1/2" (15mm) F700
    White Color
    Coated . . . . . . . . . . . . . . PSN 56-701-4-010

**Sprinkler Wrench:**
Specify: Model F850 Sprinkler Wrench, PSN 56-850-4-001.

## WEIGHT

The nominal weights are as follows.

1/2" Orifice Model A
    Pendent Sprinkler . . . . . . . . . 2.2 ozs. (62 g)
1/2" Orifice Model A
    Upright Sprinkler . . . . . . . . . . 2.3 ozs. (66 g)
1/2" Model F700
    Recessed Escutcheon . . . . . 1.0 ozs. (35 g)
Model F850
    Sprinkler Wrench . . . . . . . . . 15.5 ozs. (440 g)

# BINARY
## ENGINEERING ASSOCIATES, INC.
*Engineering Consultants*

HOLDEN, MA. 01520

P.O. Box 528
1072 MAIN ST.

TEL. (508) 829-4362
(508) 829-4361
FAX: (508) 829-0028

April 19, 2002
Project 91101

John Pezzillo
Ryan, Ryan, Johnson and Deluca
80 Fourth St.
Stamford, CT 06905

Subject: May Department Stores v Interstate Welding & Mech.
         Supplemental Report

Dear Mr. Pezzillo:

In November of 1999 I was asked to conduct an inspection of a sprinkler head that failed on September 27, 1999 in the Filene's Department Store, West Farms Mall, West Hartford, CT. The purpose of my inspection was to determine the cause of release of water through the sprinkler at the time of the incident. My opinions were expressed in a report of January 4, 2000. I have since received the reports of Robert Bussolari, Robert Tramm, Donald Pounder, and Ingemar Asp, who also have inspected the sprinkler head and reviewed the circumstances of the incident.

Based on my review of the other experts reports, I can find no basis to alter my original opinion. There is no evidence that the sprinkler was subjected to any kind of abuse by the insured which would have caused it to fail.

The only evidence of unusual mechanical damage is a nick in the disk, which seals the sprinkler. This nick would not have affected the functionality of the sprinkler and therefore could have been present at or created during. It also could have been a result of the failure or subsequent handling.

Spontaneous failure (pre-operation) of sprinklers, though rare, is not unheard of, and absent any sign of mechanical damage it is reasonable to believe this sprinkler falls into this category. Further, even if the insured had somehow damaged the sprinkler, it obviously was not in a manner that could have been detected and allowed the insured to take corrective steps, as it would be expected that mechanical damage would lead to an immediate leak.

It is well established in the sprinkler industry that pre-operation does occur, and that quick response sprinklers are more delicate and more prone to pre-operation than fusible link style or non-quick response sprinklers.

If you have any question or need more information, please call.

Sincerely,

Wilson G. Dobson, P.E.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THE MAY DEPARTMENT STORE    :
COMPANY                     :
            PLAINTIFF,      :
                            :
                            :
v.                          :    CIV. NO. 3:00 CV 2449 (AHN)
                            :
NEWFIELD CONSTRUCTION       :
COMPANY, INC., ET AL.       :
            DEFENDANTS      :

RULING ON MOTION TO COMPEL

On November 6, 2002, the court heard oral argument on the
motion to compel filed by third-party defendant/fourth-party
plaintiff, Interstate Welding and Mechanical, Inc.
("Interstate").  In that motion, Interstate seeks to compel
responses to interrogatories served on fourth-party defendant,
Gem Sprinkler Manufacturing Company ("Gem").  Gem has objected on
the sole ground that the discovery requests are untimely.

Although Interstate's discovery requests <u>are</u> untimely, they
appear to be fairly narrow[1] and a logical follow-up to the
relatively recent expert depositions.  Thus, the court is willing
to permit them.  Accordingly, based on the representations of
Interstate's counsel that these requests should not be unduly

---

[1] Interstate seeks what it characterizes as "standard,
statistical data which would be standard and routine in any
production manufacturing facility within the United States."
Counsel for Gem acknowledged that Gem has not attempted to
"gather specific information to respond to these
interrogatories," that he has no idea how burdensome they will
be, and that nothing specific leads him to the conclusion that
these interrogatories might create a need for new discovery.

burdensome to answer, and unlikely to lead to additional discovery, Interstate's motion to compel **[doc. # 69]** is **GRANTED**.

If any problems arise in responding to these requests, counsel for Interstate and Gem should contact chambers to schedule a telephone conference.  Interstate's motion to compel is granted only as to the limited request for statistical data; no further extensions of discovery will be granted absent a showing of good cause.

SO ORDERED at Bridgeport this ___ day of January 2003.

HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

2

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE MAY DEPARTMENT STORE COMPANY<br>*PLAINTIFF* | : CIVIL ACTION NO.<br>: 300-CV-2449-AHN<br>: |
| | : |
| vs. | :<br>: |
| | : |
| NEWFIELD CONSTRUCTION COMPANY, INC.<br>*DEFENDANT/ THIRD PARTY PLAINTIFF* | :<br>: |
| | : |
| vs. | : |
| | : |
| INTERSTATE WELDING AND<br>MECHANICAL CO., INC.<br>*THIRD PARTY DEFENDANT/*<br>*FOURTH PARTY PLAINTIFF* | :<br>:<br>:<br>: |
| | : |
| vs. | : |
| | : |
| NORTHERN WINDUSTRIAL CO., and<br>GEM SPRINKLER MANUFACTURING CO.<br>*FOURTH PARTY DEFENDANT/* | :<br>:<br>: |
| | : |
| and | : |
| | : |
| ADT SECURITY SYSTEMS<br>*APPORTIONMENT DEFENDANT* | :<br>:  MARCH 10, 2003 |

<u>FOURTH PARTY DEFENDANT, GEM SPRINKLER MANUFACTORING COMPANY'S
OBJECTIONS AND RESPONSES TO THE FOURTH PARTY PLAINTIFF, INTERSTATE
WELDING & MECHANICAL COMPANY, INC.'S SECOND SET OF INTERROGATORIES AND
PRODUCTION REQUESTS</u>

## INTERROGATORIES

1.     With respect to these interrogatories, please identify the person answering them and all persons providing assistance in answering them and specify which interrogatories they so assisted in answering.

ANSWER:     James Martin, Tyco Fire Products Research and Development Center, 1467 Elmwood Avenue, Cranston, RI, assisted by Carolyn Cate, Lubbock manufacturing, #5, #8, Charlotte Smyrl, Stockport manufacturing, #3, #4, #5, #8.

2.     How is "damage" defined as used in Gem's technical bulletin TD515M "care and maintenance."

ANSWER:     Damage can be anything that alters the sprinkler in any way, from its condition as a newly manufactured sprinkler. It may be the addition of paint or some other coating. It may be exposure to a corrosive atmosphere or heat greater than allowed for by its temperature rating (>100 degrees Fahrenheit for a 155 degrees Fahrenheit rated sprinkler), or from freezing. It may be physical damage from dropping, striking, or mishandling, whether or not visible marks from such damage are evident.

3.     Provide the number of units and percentage of the sprinklers that failed the leak-integrity test, for the period of one year prior to the incident to one year after the incident. The sprinklers must be broken down by model.

ANSWER:   Data to answer this question was not available from the Lubbock manufacturing plant. The earliest data available was used to estimate the totals for a one year period. These percentages represent the number of sprinklers that fail the 500 psi leak integrity test performed on 100% of the sprinklers during the manufacturing process. All those that fail this test are rebuilt, or scrapped. These percentages do not represent leaking sprinklers in the field.

**All Model A sprinklers**

| Lubbock Manufacturing | Stockport Manufacturing |
|---|---|
| Period from 7/00 to 7/01 | Period from 10/98 to 9/99 |
| Standard Orifice – 2.5% | all orifice sizes – 2.2% (143,627) |
| Large Orifice – 6.0% | Period from 1/00 to 9/00 |
| (exact numbers are not known) | all orifice sizes – 1.7% (68,554) |

4.     Provide the number of units and percentage of the sprinklers that failed the bulb-integrity test, for the period of one year prior to the incident and one year after the incident. The sprinklers must be broken down by model.

ANSWER:  Data to answer this question was not available from the Lubbock manufacturing plant.  These percentages represent the number of Model A sprinklers that fail the bulb integrity test performed on 100 % of the sprinklers during the manufacturing process.  All those that fail this test are rebuilt, and the bulbs are scrapped.  These percentages do not represent sprinklers in the field.

     Lubbock Manufacture             Stockport Manufacture
     Period from 10/98 to 9/99        all orifice sizes – 0.2% (11,423)
     No data available regarding failure rate   Period from 1/00 to 9/00
     Manufactured quantities at Lubbock are:  all orifice sizes – 0.1% (3,379)
        10/98 – 9/99 (3.4 million)
        10/99 – 9/00 (4.0 million)

5.       Provide the number of units and percentage of the sprinklers that were returned as defective, for the period of one year prior to the incident to one year after the incident. Please break this out by model type and state the reason for the defect.

ANSWER:     The intention or belief of the person returning a sprinkler that has been used in the field is not always known.  The numbers represent the total field returns (sprinklers actually used in the field, i.e. were installed into a sprinkler system) of Model A sprinklers over that time period, whether they were returned under the returning person's assumption that they were defective, or not.

     Period from 10/98 to 9/99
        25 returned as leaking
           (9 were machining errors, 7 were casting flaws, 4 were corrosion related,
and 4 were damage related, 1 unfounded)
        12 returned for operation
           (4 unknown causes, 6 damage related, 2 casting flaws)
     Period from 10/99 to 9/00
        8 returned as leaking (3 stress corrosion, 1 casting flaw, 4 unfounded)
        10 returned for operation (7unknown causes, 3 damage)
        1 returned for corrosion (radiation)

6.       Has there ever been a systematic failure, also known as pre-operation, of a Gem Sprinkler unit either in the laboratory or in the field?

ANSWER:      Objection.  The Defendant objects to the terms "systematic failure" and "pre-operation" as being vague, ambiguous and incongruous.  Without waving said objection, to the extent that this interrogatory is referring to sprinkler operation under circumstances when there is no fire, then the answer is yes.

7.  If the answer to #6 above is yes, please identify the following:
    a.  The model type and the year of failure for the period of two years before the incident in 1999, to one year after the incident in 1999;
    b.  The number of failures that occurred in the field and the number of failures that occurred in the laboratory;
    c.  The reason for failure if known;
    d.  Whether there are any investigative reports related to systematic failures, which occurred in the field.

ANSWER:    The answers to this question are being supplied in regard to the "yes" answer to question #6, under the presumption that the interpretation of interrogatory #6 was correct.

Model A Sprinklers
    a.  Period from 10/97 to 9/98
            returned for operation (3 unknown causes, 4 damage related, 1 casting defect)
            See #5 above for 10/98-9/99 & 10/99-9/00

    b.  All occurred in the field.
    c.  Various reasons including physical damage, abusive handling, freezing, over-heating, casting anomaly.
    d.  Yes.

8.  What is the systematic failure rate of Gem sprinkler units, for the period of one year prior to one year after the incident in September 1999?

ANSWER:        There is no "systematic" failure rate. However, the rate of sprinklers that are returned from the field for evaluation regarding an operation for no apparent reason, has been calculated to answer this question. The quantities manufactured at Lubbock were added to the estimated quantities manufactured at Stockport (estimated from the bulb integrity test estimates), and were rounded to 0.1 millions of sprinklers.

10/98-9/99 – 9.1 million manufactured
        returned for evaluation regarding leakage:
            0.0000027% (1 of 364,000)
        returned for evaluation regarding operation:
            0.0000013% (1 of 758,000) of which
            0.0000004% (1 of 2.3 million) did not have an identifiable cause.

10/99-9/00 – 7.4 million manufactured
        returned for evaluation regarding leakage:
            0.0000011% (1 of 925,000)
        returned for evaluation regarding operation:
            0.0000014% (1 of 740,000) of which
            0.0000009% (1 of 1.1 million) did not have an identifiable cause.

9.        Does Gem Sprinkler maintain statistical data on the number and type of failures that occur within their sprinkler units, both within the field and/or in a laboratory setting? If so, please identify:

    a.   The person who would have made this report;
    b.   The date of the report;
    c.   The location of the report.

ANSWER:        Gem Sprinkler does not maintain statistical data nor has any report been made.

## REQUESTS FOR PRODUCTION

1. Any and all reports, documents, notes and/or memorandum which document the information requested in Interrogatory #3.

ANSWER:    Objection. The Defendant objects to this production request as it is overly broad and burdensome in its scope. This request seeks information regarding the manufacturing of millions of sprinkler heads. As such, to obtain specific documents referring to sprinkler heads other than the one in question would require countless hours of man power. Without waving said objection, the Defendant states that it has provided the necessary information in response to interrogatory #3.

2. Any and all reports, documents, notes and/or memorandum which document the information requested in Interrogatory #4.

ANSWER:    Objection. The Defendant objects to this production request as it is overly broad and burdensome in its scope. This request seeks information regarding the manufacturing of millions of sprinkler heads. As such, to obtain specific documents referring to sprinkler heads other than the one in question would require countless hours of man power. Without waving said objection, the Defendant states that it has provided the necessary information in response to interrogatory #4.

3. Any and all reports documents, notes and/or memorandum which document the information requested in Interrogatory #5.

ANSWER:    Objection. The Defendant objects to this production request as it is overly broad and burdensome in its scope. It would require countless hours of man power to obtain and copy all of these documents. Without waving said objection, the Defendant states that it has provided the necessary information in response to Interrogatory #5.

4. Any and all reports documents, notes and/or memorandum which document the information requested in Interrogatory #6.

ANSWER:    Objection. The Defendant objects to this production request as it is overly broad and burdensome in its scope. To obtain documents regarding sprinkler operation under circumstances when there is no fire would require the review of countless documents regarding sprinkler heads having nothing to do with the instant claim, which would be extremely time consuming and burdensome to this defendant.

5. Any and all reports documents, notes and/or memorandum which document the information requested in Interrogatory #7.

ANSWER:     Objection. The Defendant objects to this production request as it is overly broad and burdensome in its scope. To obtain documents regarding sprinkler operation under circumstances when there is no fire would require the review of countless documents regarding sprinkler heads having nothing to do with the instant claim, which would be extremely time consuming and burdensome to this defendant.

6. Any and all reports documents, notes and/or memorandum which document the information requested in Interrogatory #8.

ANSWER:     Objection. The Defendant objects to this production request as it is overly broad and burdensome in its scope. This request seeks information regarding the manufacturing of millions of sprinkler heads. As such, to obtain specific documents referring to sprinkler heads other than the one in question would require countless hours of man power. Without waving said objection, the Defendant states that it has provided the necessary information in response to interrogatory #8.

FOURTH PARTY DEFENDANT,
GEM SPRINKLER MANUFACTURING COMPANY,

BY: _____
Matthew G. Conway (ct09612)
Conway & Stoughton, LLP
201 Ann Street
Hartford, CT 06103
Phone No. (860) 525-5529

### Certificate of Service

I hereby certify that on March 10, 2003, a copy of the above was mailed to the following counsel and pro se parties of record:

Stuart G. Blackburn, Esq.
Law Offices of Stuart Glenn Blackburn
Two Concord Way
P.O. Box 3216
Windsor Locks, CT 06096-3216
*Attorney for Plaintiff, The May Department*

*Store Company*

Paul M. Pieszak, Esq.
P.O. Box 99029
Hartford, CT 06109-0029
*Attorney for Defendant,*
*Newfield Construction*

Mark T. Mullen, Esq.
Cozen and O'Connor
The Atrium
1900 Market Street
Philadelphia, PA 19103
*Attorney for Plaintiff, The May Department*
*Store Company*

Andrew S. Turrett, Esq.
Law Office of
Robert M. Brennan
One Century Tower
265 Church Street
New Haven, CT 06510-7014
*Attorney for Fourth Party*
*Defendant, Northern Windustrial*
*Co.*

John J. Pezzillo, Esq.
Ryan, Ryan, Ryan, Johnson & Deluca, LLP
80 Fourth Street
Stamford, CT 06905
*Attorney for Fourth Party Plaintiff,*
*Interstate*

Matthew G. Conway

**DEFENDANT'S VERIFICATION**

I, Gem Sprinkler Manufacturing Co., hereby certify that I have reviewed the above Interrogatories and/or Requests for Production and responses thereto and that they are true and accurate to the best of my knowledge and belief.

_____

Subscribed and sworn to me before this day of _____, 2003.

_____
Notary Public

My Commission Expires 11/28/05